## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MSR IMPORTS, INC., | Case No. 26-02645 |
| *Plaintiff and proposed Class Representative*, | **CLASS ACTION COMPLAINT** |
| v. | |
| UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, and the UNITED STATES OF AMERICA, | **CLASS ACTION** |
| *Defendants*; and | |
| FEDERAL EXPRESS CORPORATION, | |
| *Defendant*. | |

## I.      INTRODUCTION

1.      Plaintiff MSR Imports, Inc. ("Plaintiff"), by and through its attorneys and on behalf of the proposed Class, alleges and states as follows:

2.      Beginning on February 1, 2025, President Donald J. Trump unilaterally increased tariffs on U.S. goods imported from nearly every foreign country through a series of Executive Orders. As a legal basis, the President invoked and relied upon the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701, *et seq*. ("IEEPA").

3.      On February 20, 2026, the Supreme Court determined that President Trump's invocation of "IEEPA does not authorize the President to impose tariffs" and was an unconstitutional exercise of the legislative power by the President. *Learning Resources, Inc. v. Trump,* No. 24-1287, slip. op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)). Accordingly, all tariffs promulgated under IEEPA (the

"IEEPA Tariffs") and all duties collected under its authority were without authorization and unlawful.

4.        Plaintiff MSR Imports, Inc. is a U.S.-based receiver of goods valued under $800 ("*de minimis*") delivered via international postal shipments by Defendant Federal Express Corporation ("FedEx") and subject to duties pursuant to the IEEPA tariffs. Plaintiff paid the IEEPA tariffs that were declared unconstitutional in *Learning Resources*.

5.        FedEx is a transportation carrier entitled to transport *de minimis* goods by international mail. As such, FedEx was mandated to assess and collect duties by President Trump's unconstitutional Executive Order applying the IEEPA tariffs to such goods. After appropriating the IEEPA tariffs from Plaintiff, FedEx was required to remit such duties to the United States. In this capacity, FedEx served as an agent to the United States pursuant to the actual authority ascribed by President Trump's Executive Order. By virtue of the Executive Order, the United States Government exercised control over FedEx.

6.        Plaintiff MSR Imports, Inc., like all members of the Proposed Class, is entitled to a full refund, with interest, of all tariffs paid to FedEx and remitted to the United States Government.

7.        FedEx has publicly and unequivocally promised that it will refund any unconstitutional tariffs it recovers from the United States Government to the consumers and businesses that paid them, stating on its website that its "intent is straightforward" and that "if refunds are issued to FedEx, we will issue refunds to the shippers and consumers who originally bore those charges."[1] However, absent this lawsuit, there is no legal mechanism to enforce

---

[1] *See* FedEx.com, https://www.fedex.com/en-us/shipping/international/us-tariffs-impact.html (last accessed Apr. 2, 2026).

FedEx's promise and ensure that Plaintiff or Class Members receive redress for the unlawful duties assessed by FedEx and ultimately remitted to the Government. Indeed, FedEx's promise of a refund also states that "[w]hen [refunds] will happen and the exact process for requesting and issuing refunds will depend in part on future guidance from the government and the court." *Id.* This case seeks to enforce FedEx's promise of refunds to Plaintiff and Class Members. Moreover, there is no reason for Plaintiff and Class Members to await any refund determination as to FedEx (which may or may not be realized).

## II.    PARTIES

8.    Plaintiff MSR Imports, Inc. is a U.S. corporation incorporated under the laws of New Jersey with its primary place of business in Pennsauken, New Jersey.

9.    Defendant United States Customs and Border Protection ("CBP") is a component agency of the Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security as well as collecting tariffs, duties, and other assessments on goods imported into the United States.

10.     Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11.    Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12.    Defendant CBP, Defendant Rodney S. Scott, and Defendant United States of America are referred to collectively in this complaint as "the Government."

13.    Defendant FedEx is incorporated under the laws of Delaware and has its principal place of business in Memphis, Tennessee.

14.    Collectively, the Government and FedEx are referred to as "Defendants."

### III.    JURISDICTION

15.    In *Learning Resources*, the Supreme Court confirmed that challenges to and cases arising from the IEEPA tariffs fall within the exclusive jurisdiction of the Court of International Trade. *See Learning Resources,* slip op. at 5.

16.    The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). Jurisdiction is proper under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i) because the typical remedy to seek redress for the wrongfully assessed tariffs—lodging a protest with CBP under 19 U.S.C. § 1514—was and is unavailable to Plaintiff and Class Members. This is because directing a constitutional challenge to CBP would have been "an utter futility." *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255, 2025 WL 3634261, at *4 (Ct. Int'l Trade Dec. 15, 2025) (quoting *Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001). Plaintiff and Class Members are "not required to file a protest" under 19 U.S.C. § 1514 where CBP is "powerless to perform any active role in the determination of the constitutionality of the assessment." *Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001). Following the Supreme Court's ruling in *Learning Resources*, CBP no longer has any authority to exercise judgment as to the constitutionality of the assessments or determine whether the Government or FedEx may retain any monies obtained pursuant to the unlawful IEEPA tariffs. As such, any protest filed by Plaintiff or Class Members would have been a legal nullity and futile, thereby removing any administrative exhaustion requirement prior to filing suit. *See AGS Co. Auto. Sols.*, 2025 WL 3634261, at *4 (Ct. Int'l Trade Dec. 15, 2025). Indeed, insistence on exhaustion would be "inequitable and an insistence of a useless formality." *U.S. Cane Sugar Refiners' Assn' v. Block*, 544 F. Supp. 883, 887 (Ct. Int'l Trade 1982); *see also United States v. U.S. Shoe Corp.*, 523 U.S.

360, 366 (1998) (agreeing with Federal Circuit that § 1581(i) is the proper jurisdictional basis where constitutional challenges are involved and CBP "merely passively collects . . . payments," as here).

17.    Because FedEx is an agent of the Government, the Court likewise has jurisdiction over it pursuant to 28 U.S.C. § 1581(i). 28 U.S.C. § 1581(i) provides this Court with jurisdiction over "the United States, its agencies, or its officers . . . ." Accordingly, in its function as an agent for the Government, jurisdiction is proper over FedEx pursuant to the principles of agency.

18.    In the alternative, the Court has supplemental jurisdiction over Plaintiff's claims against FedEx pursuant to 28 U.S.C. § 1583.

19.    This Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. *See* 28 U.S.C. §1585. In a civil action under 28 U.S.C. § 1581, the Court can "enter a money judgment . . . against the United States in any civil action commenced under section 1581 or 1582" and "order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition." 28 U.S.C. §§ 2643(a)(1), (c)(1).

20.    Plaintiff MSR Imports, Inc. has standing to bring this lawsuit because it paid duties on goods imported into the United States from countries subject to the IEEPA tariffs. As a result of the unlawful Executive Orders (set forth in ¶¶ 22–28, *infra*) promulgated by the Government, Plaintiff paid duties to the United States through FedEx in its capacity as an agent for the Government. Plaintiff has thus suffered injury caused by those Executive Orders. Declaratory judgment, reliquidation, refund, and payment of interest by the Government to Plaintiff and Class Members would redress these injuries.

## IV.    FACTUAL ALLEGATIONS

### A.    The Trump Administration's Unconstitutional IEEPA Tariffs

21.    Beginning in February 2025, President Trump issued a series of Executive Orders imposing tariffs and duties on imports based on their country of origin and on certain categories of products under IEEPA.

22.    On February 1, 2025, President Trump issued three Executive Orders that imposed tariffs on imports from Mexico, Canada, and China. Each Executive Order was premised on IEEPA authorization.[2]

23.    Four days later, on February 5, 2025, President Trump issued an additional Executive Order directed at imports from China.[3]

24.    On March 3, 2025, President Trump amended the Executive Order directed at imports from China again, this time raising the tariffs on imports from China from 10% to 20% on the basis that China had "not taken adequate steps to alleviate the illicit drug crisis through cooperative enforcement actions."[4]

25.    On April 2, 2025—a date President Trump dubbed "Liberation Day"—the President declared a "national emergency" regarding the United States' trade deficit in bilateral

---

[2] *See* Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 1, 2025) (imposing upon imports from Canada a 25% tariff with certain exceptions); Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 8327 (Feb. 1, 2025) (imposing upon imports from Mexico a 25% tariff with certain exceptions); Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 1, 2025) (imposing an additional 10% *ad valorem* tariff on goods imported from China on top of existing duties).
[3] *See* Exec. Order No. 14200, *Amendment of Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 5, 2025).
[4] *See* Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (Mar. 3, 2025).

trade relations.[5] In response, the President signed an Executive Order raising a 10% baseline tariff on imports originating in nearly all foreign countries.[6] Specifically, the Executive Order imposed a "Reciprocal Tariff Policy" imposing an additional *ad valorem* duty "on all imports from all trading partners" and providing further that "the additional *ad valorem* duty shall increase for trading partners enumerated in Annex I to this order at the rates set forth in Annex I to this order."[7]

26.    From April 2, 2025, to November 20, 2025, President Trump signed ten additional Executive Orders raising, reducing, or otherwise modifying the IEEPA tariffs on a country-by-country basis. These included a 40% *ad valorem* duty on imports from Brazil[8] and an additional 25% *ad valorem* duty on imports from Russia.[9]

27.    In addition to the tariffs above, on July 30, 2025, Executive Order 14324 rescinded the duty-free *de minimis* exemption for international shipments previously provided for by 19 U.S.C. § 1321(a)(2)(C).[10] In doing so, the President Trump again invoked IEEPA as the statutory authority to apply the IEEPA tariffs to international shipments received through transportation carriers such as FedEx.[11]

---

[5] *See* Exec. Order No. 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits,* 90 Fed. Reg. 15401 (Apr. 2, 2025).

[6] *Id*.

[7] *See id.* at § 2.

[8] *See* Exec. Order No. 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37739 (Jul. 30, 2025).

[9] *See* Exec. Order No. 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701 (Aug. 6, 2025).

[10] *See* Exec. Order No. 14324, *Suspending Duty-Free De Minimis Treatment for All Countries*, 90 Fed. Reg. 42418 (Jul. 30, 2025).

[11] *Id.*

28.     As part of the foregoing Executive Order, FedEx was required to collect and remit to CBP either the *ad valorem* duty amount or the specific duty rate designated by the IEEPA tariffs.[12] Specifically, the Executive Order mandated that "[t]ransportation carriers delivering shipments to the United States through the international postal network . . . *must collect and remit duties to CBP*" pursuant to one of two methodologies.[13]

29.     The foregoing Executive Orders imposing tariffs uniformly relied upon IEEPA as the statutory authority for the President to levy tariffs as did the Executive Order suspending the *de minimis* exemption.

30.     In implementing the unconstitutional IEEPA tariffs, the Trump Administration targeted a vast number of products imported from nearly every country in the world.[14]

31.     On February 20, 2026, the Supreme Court ruled that the Trump Administration's implementation of tariffs under IEEPA was unconstitutional. *See Learning Resources, Inc. v. Trump,* No. 24-1287, slip. op. (U.S. Feb. 20, 2026).

**B.     The United States Government Established a Principal-Agent Relationship with FedEx through Unlawful Executive Order 14324**

32.     Agency is a fiduciary relationship whereby a principal assents to an agent acting on its behalf. The agent is subject to the principal's control. The agent must likewise manifest its assent or otherwise consent to act in accordance with the principal's directives. *See* Restatement (Third) Of Agency § 1.01 (2006).

---

[12] *Id.*

[13] *Id.* (emphasis added).

[14] *Harmonized Tariff Schedule*, United States International Trade Commission, https://hts.usitc.gov/.

33.     The Government designated FedEx as its agent by directing that "transportation carriers or other Approved Qualified Parties must collect and remit duties to CBP . . . ."[15] In doing so, the Government imbued FedEx with actual authority to collect and remit tariffs on its behalf from receivers of international postal shipments.

34.     FedEx has manifested its assent to act as the Government's agent by collecting and remitting tariffs pursuant to Executive Order 14324.

35.     The Government, as the principal, exerts continuous control over its agent, FedEx. The Government is able to set the terms and conditions of the agency relationship by issuing regulations, demanding inspections, and subjecting FedEx to liability. For instance, the Government mandates that transportation carriers such as FedEx have an international carrier bond to ensure payment of duties, among other regulatory prescriptions.[16] Similarly, as to FedEx, "CBP will monitor compliance as to accurate classification and valuation, as part of ensuring fulfilment of all requirements applicable to informally entered merchandise . . . ."[17] FedEx is liable to the Government for failure to properly collect or remit duties to CBP and because of this, is under the Government's control.

**C.      The Tariff-Induced Economic Threat has Not Ended**

36.     Following the Supreme Court's decision in *Learning Resources* invalidating the IEEPA tariffs, President Trump immediately instituted a 10% baseline tariff by invoking Section 122 of the Trade Act of 1974—an action no U.S. President has ever taken.

---

[15] *See* Exec. Order No. 14324, *Suspending Duty-Free De Minimis Treatment for All Countries*, 90 Fed. Reg. 42418 (Jul. 30, 2025).

[16] *See* 19 C.F.R. § 113.64 (2018).

[17] *See* Notice of Implementation of the President's Executive Order 14324, Suspending Duty-Free De Minimis Treatment for All Countries, 90 Fed. Reg. 42418 (Sep. 2, 2025).

37.     On the same day as the Supreme Court's decision in *Learning Resources*, President Trump issued another executive order purported to amend the duty rates applicable to imports to the United States that would otherwise qualify for the *de minimis* exemption.[18] That Executive Order continued the mandate that transportation carriers such as FedEx collect and remit duties to CBP.[19]

38.     The next day, on February 21, 2026, Trump took to Truth Social stating that, "[b]ased on a thorough, detailed, and complete review of the ridiculous, poorly written, and extraordinarily anti-American decision on Tariffs issued yesterday, after MANY months of contemplation, by the United States Supreme Court, please let this statement serve to represent that I, as President of the United States of America, will be, effective immediately, raising the 10% Worldwide Tariff on Countries . . . to the fully allowed, and legally tested, 15% level."[20]

39.     In addition, following the Supreme Court's decision in *Learning Res., Inc.*, Treasury Secretary Scott Bessent delivered remarks on tariffs and the economy at the Economic Club of Dallas. When asked where the $175 billion dollars generated by the unconstitutional tariffs would go, Secretary Bessent indicated that the United States did not intend to repay or refund them. As he stated, "the American people won't see it."[21]

40.     On February 22, 2026, CBP announced that the duties promulgated under the unlawful IEEPA tariffs "will no longer be collected for goods entered for consumption or

---

[18] *See* Exec. Order No. 14388, *Continuing the Suspension of Duty-Free De Minimis Treatment for All Countries*, 91 Fed. Reg. 9433 (Feb. 20, 2026).
[19] *Id.*
[20] Donald J. Trump (@realDonaldTrump) TRUTH SOCIAL (Feb. 21, 2026, 7:59 AM), https://truthsocial.com/@realDonaldTrump/posts/116109447886304328.
[21] *Treasury Secretary Bessent Speaks at Economic Club of Dallas*, C-SPAN (Feb. 20, 2026) https://www.c-span.org/program/public-affairs-event/treasury-secretary-bessent-speaks-at-economic-club-of-dallas/673758 at 20:54.

withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026."[22]

41.     While CBP has since begun setting up an administrative regime for the payment of certain refunds, referred to as the Consolidated Administration and Processing of Entries ("CAPE"), the CAPE process as currently constituted would only result in a refund payment to FedEx, not to the shippers and consumers to whom FedEx passed on the IEEPA tariffs.

42.     FedEx, for its part, stated "[i]f refunds are issued to FedEx, we will issue refunds to the shippers and consumers who originally bore those charges."[23] But FedEx is not the proper recipient of any refund from the Government—Plaintiff and Class Members are. There is no reason for Plaintiff to await any refund determination as to FedEx (which may or may not be realized). Absent this lawsuit, there remains no prospect for Plaintiff or Class Members to receive redress for the unlawful duties assessed by FedEx and ultimately remitted to the Government.

**D.     Statutory and Regulatory Scheme**

**1.     CBP's Authority and Application of the Unconstitutional IEEPA Tariffs**

43.     CBP is charged with the assessment and collection of duties, including the IEEPA tariffs, and regulations related thereto. *See* 19 U.S.C. §§ 1500, 1502.

44.     In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which provided for the current tariff nomenclature: the Harmonized Tariff Schedule of the

---

[22] U.S. Customs and Border Protection, *Cargo Systems Messaging Service, CSMS # 67834313 - Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026, 9:57 PM), https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP.
[23] *See* FedEx.com, https://www.fedex.com/en-us/shipping/international/us-tariffs-impact.html (last accessed Apr. 2, 2026).

United States (the "HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP's regulations classify and appraise merchandise imported into the United States consistent with the HTSUS, which enumerates the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. *See* 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings."); 19 U.S.C. § 1202.

45.    The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with Presidential orders. *See* 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Mktg., Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

46.    19 U.S.C. § 1321(a)(2)(C) authorizes the Secretary of the Treasury to disregard the collection of duties on international shipments *de minimis* imports. Executive Order 14324 suspended this discretion and mandated transportation carriers such as FedEx to collect and remit duties on such international shipments. As such, FedEx, and other transportation carriers, serve as instrumentalities and agents of CBP and the Government for the collection of duties for these goods.

47.    On September 22, 2025, CBP promulgated formal guidance implementing the mandate of Executive Order 14324.[24] The guidelines prescribe the methodologies by which a transportation carrier is to determine the applicable duty rate.

---

[24] *See* U.S. Customs and Border Protection, *Global Guidance for International Mail*, https://content.govdelivery.com/attachments/USDHSCBP/2025/09/22/file_attachments/3396200/Updated%20-%20Global%20Guidance%20for%20International%20Mail%20-%209.22.25.pdf.

## 2. Liquidation

48. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

49. Goods received through the international post subject to *de minimis* treatment are typically eligible for "informal entry." *See* 19 C.F.R § 143.21(a). This means that liquidation normally occurs upon either: (1) the date of payment by the importer of duties due on entry; (2) the date of release by CBP or the postmaster when the merchandise is released under such an entry free of duty; or (3) the date a free entry is accepted for articles released under a special permit for immediate delivery under part 142 of 19 C.F.R chapter I. 19 C.F.R. 159.10(a)(1)–(3).

50. There are two postures regarding liquidation relevant to this case affected by the IEEPA tariffs. First, there are duties that have been liquidated but remain within the 180-day window permitting an administrative protest pursuant to 19 U.S.C. § 1514. Second, there are duties that have been liquidated but are no longer within the 180-day period for lodging protest. Regardless of their posture, FedEx and the Government have unlawfully collected these duties from Plaintiff and Class Members. None are protestable pursuant to the administrative process.

51. This Court, however, possesses the legal authority to order reliquidation or other applicable relief—regardless of when or if liquidation occurred—by "enter[ing] a money judgment . . . for or against the United States in any civil action commenced under [28 U.S.C.] section 1581 or 1582" or "any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." 28 U.S.C. §§ 2643(a)(1), (c)(1); *see In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1376 (Ct. Int'l Trade 2021) ("[W]e view [28 U.S.C. section 2643] as providing this Court with the explicit power to order reliquidation and refunds where the government has unlawfully

13

exacted duties."); *see also id*. at 1373 ("[M]y colleagues and I agree that any harm arising from liquidation would be reparable by the court by means of an order of reliquidation . . . ." (Barnett, C.J., dissenting)).

52.     A three-judge panel of this Court already confirmed the authority of this Court to reliquidate entries subject to the unlawful IEEPA tariffs. *See AGS Co., Automotive Sol.*, 2025 WL 3634261, at *4 (Ct. Int'l Trade Dec. 15, 2025). Further, the Government stated in related litigation challenging the unlawful IEEPA tariffs that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection*, Case No. 25-cv-00078 (Ct. Int'l Trade May 23, 2025), ECF No. 16 at 12, n.4. Therefore, there is no impediment to this Court ordering the reliquidation of duties collected and remitted by FedEx pursuant to the unlawful IEEPA tariffs.

### E.     Plaintiff Suffered Economic Harm due to the Trump Administration's Unconstitutional Tariffs

53.     FedEx, in its capacity as the Government's agent, assessed unlawful IEEPA tariffs from Plaintiff. Plaintiff paid such duties to FedEx and, because of FedEx's actions, suffered economic harm.

## V.     CLASS ALLEGATIONS

54.     The "**Class Period**" as defined in this Complaint begins on at least February 1, 2025, and runs through the present. Plaintiff reserves the right to amend the Class Period to comport with the facts and evidence uncovered during further investigation or through discovery.

55.     **Class definition.** Plaintiff brings this action for damages and injunctive relief as a class action under United States Court of International Trade Rules 23(b)(2), (b)(3), and (c)(4), on behalf of the following Class:

**All persons and entities who paid duties attributable to the IEEPA tariffs to FedEx, and/or were assessed such duties by FedEx, during the Class Period in connection with the receipt of international shipments into the United States.**

56.    This Class definition excludes:

a.    Defendants named herein;

b.    any of the Defendants' co-conspirators;

c.    any of Defendants' officers, directors, management, employees, subsidiaries, affiliates, or agents; and

d.    the judges and chambers staff in this case, as well as any members of their immediate families.

57.    **Numerosity.** Plaintiff does not know the exact number of members in the Class. This information is in the exclusive control of Defendants. On information and belief, there are at least hundreds of thousands of members in the Class geographically dispersed throughout the United States. Therefore, joinder of all members of the Class in the prosecution of this action is impracticable.

58.    **Typicality.** Plaintiff's claims are typical of the claims of other members of the Class because Plaintiff and all members of the Class were damaged by the same wrongful conduct of Defendants as alleged herein, and the relief sought herein is common to all members of the Class.

59.    **Adequacy.** Plaintiff will fairly and adequately represent the interests of the members of the Class because Plaintiff has experienced the same harms as the members of the Class and has no conflicts with any other members of the Class. Furthermore, Plaintiff has retained sophisticated and competent counsel who are experienced in prosecuting federal and

state class actions, as well as other complex litigation.

60.    **Commonality and predominance.** Numerous questions of law or fact common to each Class member arise from Defendants' conduct and predominate over any questions affecting the members of the Class individually:

a.    Whether the IEEPA tariffs are constitutional.

b.    Whether Plaintiff and Class Members received a product subject to a tariff promulgated by the President unlawfully under IEEPA.

c.    Whether FedEx is an agent of the Government.

d.    Whether FedEx unlawfully assessed duties from Plaintiff and Class Members pursuant to the IEEPA tariffs in its capacity as the Government's agent.

e.    Whether Plaintiff and Class Members paid unlawfully assessed duties to FedEx pursuant to the IEEPA tariffs.

f.    Whether the Government or FedEx must refund the unlawfully collected duties.

g.    Whether the Court has jurisdiction over this matter.

h.    Whether Plaintiff and Class Members are subject to an administrative exhaustion requirement.

i.    Whether any affirmative defense excuses the Defendants' conduct.

j.    Whether any statutes of limitation limits the potential for recovery for Plaintiff and Class Members.

k.    The amount of unlawful IEEPA tariffs FedEx remitted to the Government.

l.    The amount of unlawful IEEPA tariffs in the possession of the Government and FedEx, respectively.

m.     The process by which Plaintiff and Class Members shall receive repayments or refunds of the unlawful IEEPA tariffs.

61.     **Other class considerations.** Defendants have acted on grounds generally applicable to the Class. This class action is superior to alternatives, if any, for the fair and efficient adjudication of this controversy. Although the Supreme Court invalidated the IEEPA tariffs, the Court did not address how—or if—the monies stripped from Americans would be returned.

62.     The scale and scope of litigation involving the unlawful IEEPA tariffs is massive and overwhelming making individual litigation unpractical and unnecessary. Numerous actions have already been filed seeking redress from the unlawful IEEPA tariffs both before the Supreme Court's decision in *Learning Res., Inc.*, and after. In order "[t]o facilitate the administration of new cases that continue to be filed challenging the imposition of tariffs under [IEEPA]," this Court has issued a stay of cases seeking redress of unlawful monies collected under the President's unlawful exercise of authority. *In re: Procedures for Entering a Stay in New IEEPA Tariff Cases*, Administrative Order 25-02 (Ct. Int'l Trade Dec. 23, 2025). Permitting a class action would be in the interest of justice. Absent a class action, there is a substantial risk that many of the thousands of recipients of international goods who paid unlawful IEEPA tariffs to FedEx will be left without a viable means of redress.

63.     As Scott Lincicome, Vice President of General Economics at the Cato Institute noted, engaging in extensive litigation to receive a refund creates a "particularly unfair burden

for smaller importers" because they "lack the resources to litigate tariff refund claims."[25] This class action will accordingly permit injured parties to obtain redress. This is especially true of those who paid duties to carriers such as FedEx who collected and remitted duties on the United States Government's behalf and are without any direct means of seeking redress to recoup the unlawful IEEPA tariffs.

64.    Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation and ensure access to justice. There will be no material difficulty in the management of this case as a class action. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

65.    For these reasons, a class action is a superior method of adjudicating full refunds of duties collected by FedEx pursuant to the Government's unlawful IEEPA tariffs. Regardless of the duties' posture under the statutory scheme, a class action presents the most manageable and efficient method of recouping the monies collected unlawfully pursuant to the IEEPA tariffs.

## VI.    CAUSES OF ACTION

### COUNT 1
(28 U.S.C. § 1581(i) & 28 U.S.C. 2643)

66.    Plaintiff incorporates paragraphs 1-53 as if alleged herein.

67.    Plaintiff has paid unlawful IEEPA tariffs to FedEx which remitted such funds to the Government.

---

[25] *Cato Experts React to the Supreme Court Overruling President Trump's Tariffs*, CATO Institute (Feb. 20, 2026), https://www.cato.org/news-releases/cato-experts-react-supreme-court-overruling-president-trumps-tariffs#:~:text=That%20refund%20process%20could%20be,the%20administration's%20worst%20tariff%20impulses.

18

68.    Defendants maintain the monies received through the unlawful IEEPA tariffs. Defendants have not repaid or refunded such unlawful tariffs, nor any interest due thereon, despite their unconstitutionality.

69.    The Supreme Court held in *Learning Resources* that the President exceeded his authority under IEEPA when he imposed tariffs on imported goods. This opinion affirmed this Court's prior decision and the Federal Circuit's affirmance in *V.O.S. Selections, Inc. v. Donald J. Trump,* 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025).

70.    In *Learning Resources*, the Supreme Court further held that all tariffs imposed under IEEPA are and were unlawful.

71.    Plaintiff is entitled to repayment and refund of all tariffs imposed under IEEPA and interest thereon.

72.    While FedEx may have been mandated by the unlawful regulations to serve as an agent and collect and remit duties on the United States Government's behalf, proper ownership of those monies lies with Plaintiff. And because FedEx was acting as an agent of the Government and required to collect from Plaintiff unlawful IEEPA tariffs and remit them to the Government, FedEx and the Government are jointly and severally liable for the collection of the unlawful duties.

73.    This Court is bound by the *Learning Resources* decision and as a result of that decision, should order refunds of all monies paid by Plaintiff and the Class, with interest as provided by law. This Court has the remedial authority to do so under the Customs Act of 1980, 28 U.S.C. § 2643. *See AGS Co. Auto. Sols.*, 2025 WL 3634261 at *3.

19

**COUNT 2**
**DECLARATORY RELIEF**
(USCIT Rule 57; 28 U.S.C. § 2201)

74.     Plaintiff incorporates paragraphs 1-53 as if alleged herein.

75.     This Court has the power to issue a declaratory judgment pursuant to Court of International Trade Rule 57, which authorizes this Court "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

76.     Plaintiff has suffered injury pursuant to the Government's unlawful IEEPA tariffs and FedEx's collection thereof.

77.     The unlawful IEEPA tariffs have had far-reaching effects across the American economy. Plaintiff and those similarly-situated have demonstrated a substantial controversy, between Defendants and themselves, of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

78.     Plaintiff seeks redress for duties unlawfully paid subject to the IEEPA tariffs through FedEx acting as the Government's agent.

79.     Plaintiff and Class Members have paid duties on imported goods. These duties have (1) been liquidated within the past 180 days or (2) have been liquidated over 180 days of the instant complaint. The IEEPA tariffs have been held to be unconstitutional by the Supreme Court, and CBP has no authority to exercise any authority to assess the validity of the IEEPA tariffs under which Plaintiff and Class Members were assessed unlawful duties. Plaintiff seeks a declaration of rights with respect to these transactions and that it has no obligation to resort to an otherwise inequitable and futile administrative process for redress.

80.     Plaintiff also seeks a declaration of rights with respect to any future tariffs promulgated under the unlawful exercise of IEEPA authority, given President Trump's continued

statements of intent to further proliferate duties.

81.    In the alternative, and in the event that money damages are impractical or impossible, this Court should issue a declaration that the IEEPA tariffs are illegal, that they cannot be enforced, and that all monies collected under its aegis can and should be refunded without delay, with interest.

**COUNT 3**
**Unjust Enrichment**
**(Against FedEx)**

82.    Plaintiff incorporates paragraphs 1-53 as if alleged herein.

83.    In the alternative, Plaintiffs and Class Members are entitled to restitution. FedEx would be unjustly enriched if it was to be refunded duties it collected from Plaintiff and Class Members and remitted to the United States Government without returning them to Plaintiff and Class Members.

84.    Plaintiff and Class Members conferred a direct financial benefit upon FedEx by paying IEEPA tariffs to it.

85.    The IEEPA tariffs imposed by President Trump were unconstitutional and exceeded his Executive Power. As a result, FedEx collected duties and fees that were unlawful and to which they were not legally entitled.

86.     FedEx has sought a refund for the unlawful IEEPA tariffs, but retaining those refunds would be an inequitable windfall as FedEx simply acted as intermediary to collect unlawful duties on behalf of the Government.

87.    Plaintiff has suffered economic injury as a result of FedEx's collection of these funds. FedEx is unjustly enriched at the expense of Plaintiff.

88.    Equity requires that FedEx disgorge all unlawfully collected monies with interest that were collected pursuant to the unlawful IEEPA tariffs.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that the Court enter judgment on their behalf and on behalf of the Class defined herein, by ordering:

a)    This action may proceed as a class action pursuant to Court of International Trade Rule 23, with Plaintiff serving as Class Representative, and with Plaintiff's counsel as Class Counsel;

b)    Declaratory judgment pursuant to Court of International Trade Rule 57 and 28 U.S.C. § 2201 holding that tariffs promulgated subject to the unlawful acts described herein and any future acts imposing further tariffs under IEEPA, as well as any corresponding modifications to the HTSUS are unlawful because (1) any such tariffs exceed the authority granted to the President by IEEPA; (2) that the President has not declared an emergency that is unusual or extraordinary as defined by IEEPA; or (3) that any such unlawful imposition of tariffs under IEEPA is an unconstitutional usurpation of the legislative power;

c)    An Order setting aside any modifications to the HTSUS conducted in furtherance of the unlawful IEEPA tariffs pursuant to 5 U.S.C. § 706;

d)    An Order directing CBP to reliquidate any duty entries that have been liquidated pursuant to IEEPA duties;

e)    An Order directing CBP to liquidate all unliquidated entries subject to IEEPA duties without the unlawful IEEPA duties (*i.e.* process such entries without the unlawful tariffs);

22

f)       An Order directing the Government and FedEx to jointly and severally reimburse Plaintiff and Class Members for any other damages incurred as a result of or pursuant to the actions alleged herein and any future unlawful tariffs relying on IEEPA as provided for 28 U.S.C. § 2643(a) or any other applicable law;

g)       An award to Plaintiff and Class Members of pre- and post-judgment interest;

h)       An award to Plaintiff and Class Members of reasonable costs, including attorneys' fees incurred in bringing this action including under the Equal Access to Justice Act, 28 U.S.C. § 2412;

i)       An Order declaring that Defendants are responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification to the Class; and

j)       Such further relief as the Court deems proper.

Dated: April 3, 2026

By: _/s/ Michael Dell'Angelo_

Michael Dell'Angelo (PA Bar No. 80910)
(*admission pending*)
Joseph E. Samuel, Jr. (PA Bar No. 327645)
(*application for admission forthcoming*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19130
(215) 875-3020
mdellangelo@bergermontague.com
jsamuel@bergermontague.com

Joshua H. Grabar (PA Bar No. 82525)
(*application for admission forthcoming*)
**GRABAR LAW OFFICE**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(267) 507-6085
jgrabar@grabarlaw.com

By: _/s/ Joseph Saveri_

Joseph R. Saveri (CA Bar No. 130064)
Cadio Zirpoli (CA Bar No. 179108)
(*admission pending*)
Christopher K. L. Young (CA Bar No. 318371)
(*admission pending*)
Drew M. Morgan (CA State Bar No. 366901)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone:  (415) 500-6800
Facsimile:  (415) 395-9940
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
dmorgan@saverilawfirm.com

Michael M. Buchman (NY Bar No. 2540219)
(*admission pending*)
Avery M. Wolff (NY Bar No. 6078596)
**SAVERI LAW FIRM, LLP**
780 Third Avenue, Suite 1200
New York, NY 10017
Telephone:  (212) 970-0300
Facsimile:  (212) 970-0301
mbuchman@saverilawfirm.com
awolff@saverilawfirm.com

24