**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| MSR IMPORTS, INC., | |
| *Plaintiff and proposed class, Representative* | |
| v. | Case No. 1:26-cv-02645 |
| UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, and the UNITED STATES OF AMERICA | |
| *Defendants*; and | |
| FEDERAL EXPRESS CORPORATION, | |
| *Defendant*. | |

DEFENDANT FEDERAL EXPRESS CORPORATION'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

Defendant Federal Express Corporation ("FedEx"), pursuant to USCIT R. 12(b)(1) and (b)(6), moves the Court for an Order dismissing Plaintiff MSR Imports, Inc.'s ("MSR") Class Action Complaint against FedEx. The grounds for the Motion are set out below.

## INTRODUCTION

FedEx is a common carrier. Shippers contract with FedEx to transport their packages to recipients like MSR. For international shipments, shippers may also engage FedEx's customs brokerage service, which is provided by a third-party subsidiary, to facilitate the movement of their goods across international borders. As

part of its brokerage services, FedEx (through its subsidiary) pays estimated duties and tariffs to U.S. Customs and Border Protection ("CBP") on behalf of its customers for whom it serves as the Importer of Record and at the request of certain customers who serve as their own Importer of Record. FedEx essentially serves as a pass-through for these payments, paying the estimated amount to CBP and then billing its customers for the duties and tariffs paid after the fact.[1]

In February 2025, the United States imposed tariffs on imports based on their country of origin under the International Emergency Economic Powers Act ("IEEPA"). In February 2026, in *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 230 (2026), the U.S. Supreme Court ruled that these tariffs are unlawful. For the year that the IEEPA tariffs were effective, FedEx paid these IEEPA tariffs to CBP on behalf of many of its shippers and billed for the tariffs and its customs brokerage services.

MSR admittedly received goods subject to the IEEPA tariffs during the relevant period prior to February 2026 when the tariffs were deemed unlawful. It also paid the tariffs to FedEx, which it admits FedEx, in turn, remitted to the U.S. government, retaining none of the tariff funds for itself. Yet, MSR conjures a novel and untenable theory that in performing routine brokerage services, FedEx transformed into an agent of the government, making FedEx jointly and severally

[1] Pursuant to FedEx's Service Guide, which applies to all shipments transported by FedEx, the shipper may designate the recipient of the goods as the payer for any duties, taxes, or other fees paid by FedEx to a customs agency.

liable for refunds of IEEPA tariffs. Taking issue with the customs brokerage services FedEx performed, MSR asserts an unjust enrichment claim against FedEx.

MSR's claim against FedEx fails for two reasons: (1) the Court lacks subject-matter jurisdiction over MSR's unjust enrichment claim, and (2) even if the Court had jurisdiction, the claim fails because no such claim is recognized under federal common law. FedEx's motion should be GRANTED.

## LAW AND ARGUMENT

### A. The Court does not have subject matter jurisdiction over MSR's unjust enrichment claim against FedEx.

"Subject matter jurisdiction is a threshold issue...and plaintiff carries the burden of demonstrating that its assertion of subject matter jurisdiction is proper." *Giorgio Foods, Inc. v. United States*, 37 C.I.T. 294, 307 (2013) (citations omitted). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, the 'court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff.'" *Id.* (citation omitted).

MSR asserts a single common-law claim for unjust enrichment against FedEx. *See* MSR's Compl., ECF No. 2, Count 3 at 20. In support of this claim, MSR alleges it "conferred a direct financial benefit upon FedEx by paying IEEPA tariffs to it." *Id.* ¶ 84. MSR further alleges that FedEx remitted payment of these tariffs to the U.S. government. *Id.* ¶ 83. And, FedEx subsequently sought a refund of these tariffs, ostensibly in the wake of the *Learning Resources* decision. *Id.* ¶ 86. As a remedy, MSR seeks "a full refund, with interest, of all tariffs paid to FedEx and remitted to the United States Government." *Id.* ¶ 6.

MSR presents two theories for the Court's subject matter jurisdiction over its claim against FedEx: (1) FedEx acted as an agent of the U.S. government providing the Court with exclusive jurisdiction under 28 U.S.C. § 1581(i); or, (2) the Court has supplemental jurisdiction under 28 U.S.C. § 1583. *See* Compl. ¶¶ 17-18. Both theories fail.

*i. FedEx's customs broker activities do not make it an agent of the government.*

FedEx is not an agent of the U.S. government as a matter of law. Subject matter jurisdiction under Section 1581(i) is limited to actions against "the United States, its agencies, or its officers." *Pat Huval Rest. & Oyster Bar, Inc. v. United States Int'l Trade Comm'n*, 36 C.I.T. 333, 349 (Ct. Int'l Trade 2012) (internal quotation marks omitted). Federal Circuit precedent is "unambiguous [and] clear that [§ 1581(i)'s] scope is strictly limited." *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1326 (Fed. Cir. 2006) (quoting *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)). MSR details the customs brokerage services FedEx provided. MSR was "a U.S.-based receiver of goods valued under $800...delivered via international postal shipments by [FedEx]." Compl. ¶ 4. In turn, FedEx, "a transportation carrier entitled to transport *de minimis* goods by international mail...was mandated to assess and collect [IEEPA] duties...[and] remit such duties to the United States." *Id.* ¶ 5. To be sure, these allegations describe the common relationship between a customs broker and a shipper.

But, in a sleight of hand, MSR alleges "[t]he Government designated FedEx as its agent by directing that 'transportation carriers or other Approved Qualifiers must

collect and remit duties to CBP.'" *See id.* ¶ 33. And FedEx "manifested its assent to act as the Government's agent by collecting and remitting tariffs." *Id.* ¶ 34. Complying with federal law and remitting tariff payments to CBP in its capacity as a customs broker does not make FedEx an agent of the government. Indeed, MSR's sweeping allegations would have every customs broker be a U.S. government agent and, by extension, any company that complies with federal law, such as a company that withholds Social Security contributions from an employee's paycheck pursuant to federal tax laws.

Title 19 C.F.R. § 111.1 defines a "customs broker" as "a person who is licensed...to transact customs business on behalf of others." And it defines "customs business" to include "those activities involving transactions with CBP concerning the entry and admissibility of merchandise...the payment of duties, taxes, or other charges assessed or collected by CBP on merchandise by reason of its importation." As a private entity licensed to transact customs business, including payment of assessed duties and taxes owed to CBP, on behalf of its shipper customers, FedEx is the quintessential customs broker. Courts have long recognized that a customs broker, authorized to conduct customs business, does so as an agent of the owner of the goods, not the government. *See Corrigan v. United States*, 35 C.C.P.A. 10, 17 (1947); *see also*, *United States v. Yip*, 930 F.2d 142, 144 (2d Cir. 1991) ("Although importing companies routinely rely on customs brokers to act as their agents, secure safe passage through the maze of customs regulations, and pay the duties owed on their goods..., the brokers are only the agents of the importers; an importer remains

liable to the United States for duties regardless of what payment arrangements it may have made with a broker/agent.") (citation omitted). Consequently, MSR's FedEx-as-government-agent theory fails as a matter of law and must be rejected.

*ii. MSR's unjust enrichment claim against FedEx is not a counterclaim, cross claim, or third-party action.*

MSR invokes 28 U.S.C. § 1583 as an alternative source of jurisdiction. That argument, too, is dead on arrival. Section 1583 grants this Court jurisdiction over only counterclaims, cross-claims, or third-party actions, if such claims are to recover upon customs duties relating to merchandise. *See* 28 U.S.C. § 1583. But MSR's unjust enrichment claim against FedEx is none of these: it is not a counterclaim, cross claim, or third-party action. It is a direct claim against FedEx.

It is settled that this Court lacks jurisdiction over MSR's claim against FedEx. In *Pat Huval Restaurant*, the Court denied leave to amend the complaint to add a direct claim of unjust enrichment against the defendant-intervenors because it "[did] not fall within the Court's limited jurisdiction over counterclaims, cross claims, or third party actions [under § 1583]." *Pat Huval Rest.*, 36 C.I.T. at 349. The proposed claim, a direct claim by the plaintiff against defendant intervenors, did not fall within the Court's limited jurisdiction over counterclaims, crossclaims, or third-party actions under 28 U.S.C. § 1583, nor could the Court exercise jurisdiction over this proposed claim by invoking supplemental jurisdiction as granted by Congress to the district courts under 28 U.S.C. § 1367, or common law pendent or ancillary jurisdiction. *See*

*id.* (citing *Sioux Honey Ass'n. v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1051–55 (Fed. Cir. 2012)). The same result obtains here.[2]

**B. Federal common law does not recognize a claim for unjust enrichment in this context.**

Even if the Court could exercise subject matter jurisdiction over MSR's unjust enrichment claim against FedEx, the claim would still fail as a matter of law because federal common law does not recognize it. As a preliminary matter, "[t]here is no federal *general* common law." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (emphasis added). Despite this pronouncement, since *Erie*, the U.S. Supreme Court has created some federal common law in a very "few and restricted" instances. *Wheeldin v. Wheeler*, 373 U.S. 647, 651 (1963). These instances generally fall into two categories: (1) those in which a federal rule of decision is "necessary to protect uniquely federal interests," *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426 (1964), and (2) those in which Congress has given the courts the power to develop substantive law. *Wheeldin*, 373 U.S. at 652.

Here, there is no "uniquely federal interest." While MSR attempts to portray its claim against FedEx as a tariff dispute involving the government, the actual dispute is between a private company (Plaintiff) and a private customs broker (FedEx). Ultimately, Plaintiff is seeking a refund of the now unlawful IEEPA tariffs paid by FedEx to the U.S. government on its behalf. The U.S. Supreme Court has

---

[2] It is not clear why MSR, in the "Jurisdiction" section of its complaint, invokes 28 U.S.C. § 1585, *see* Compl. ¶ 19, because that provision is not an independent source of jurisdiction. *See Sioux Honey,* 672 F.3d at 1052.

already declared those tariffs unlawful, and this Court has ordered CBP to issue refunds. As the Importer of Record, FedEx has filed its own action for refunds against the U.S. Government,[3] engaged in the CAPE refund process, and has established a procedure for disbursing all refunds and interest it receives from the U.S. Government back to its customers. MSR's unjust enrichment claim implicates no "uniquely federal interest" nor a congressional mandate to the courts to develop substantive law; thus, its claim is not cognizable under federal common law and should be dismissed.

## CONCLUSION

Based on the foregoing, FedEx respectfully requests the Court enter an Order dismissing MSR's claim against it and awarding FedEx such other and further relief to which it may be entitled.

Respectfully submitted,

s/ Daniel W. Wolff
**CROWELL & MORING LLP**
600 Fifth Street, N.W.
Washington, DC 20001
Tel 202-624-2621
dwolff@crowell.com

Weronika Bukowski
**CROWELL & MORING LLP**
Two Manhattan West
375 9th Avenue
New York, NY 10001
Tel 212-530-1930
wbukowski@crowell.com

[3] *See Fed. Exp. Corp. v. U.S. Customs and Border Protection*, No. 1:26-cv-01150 (Ct. Int'l Trade Feb. 23, 2026).

Brandon D. Pettes
**FEDERAL EXPRESS CORPORATION**
3620 Hacks Cross Rd.
Bldg. B, 3rd Floor
Memphis, TN 38125
Tel 901-434-8537
Fax 901-434-4523
brandon.pettes@fedex.com

*Attorneys for Defendant Federal Express Corporation*